## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPHINE ZAPALIK and SCOTT ZAPALIK, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.:  08 C 295 |
| | ) | |
| BAUSCH & LOMB INCORPORATED, and | ) | Judge Milton I. Shadur |
| WALGREEN CO., | ) | |
| | ) | Mag. Judge Martin C. Ashman |
| Defendants. | ) | |

### FIRST AMENDED COMPLAINT AT LAW

NOW COME the Plaintiffs, JOSEPHINE ZAPALIK and SCOTT ZAPALIK, and for their causes of action against the defendants, Bausch & Lomb Incorporated ("Bausch & Lomb") and Walgreen Co. ("Walgreen"), state and allege as follows:

### INTRODUCTION

1.      This is an action to recover damages for personal injuries suffered by Josephine Zapalik and Scott Zapalik as a direct and proximate result of Bausch & Lomb's negligent, unreasonably dangerous and wrongful conduct in connection with the design, development, manufacture, testing, packaging, advertising, promoting, marketing, distributing, labeling, and sale of Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution (hereinafter referred to as "ReNu" or the "subject product").

2.      This is an action to recover damages for personal injuries suffered by Josephine Zapalik and Scott Zapalik as a direct and proximate result of Walgreen's placement of a defective product into the stream of commerce.

3.     At all times material hereto, ReNu was designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled, and sold by Bausch & Lomb herein.

## JURISDICTION AND VENUE

4.     At all relevant times, Josephine Zapalik was a citizen of the state of Illinois, and a soft contact lens wearer who purchased and used ReNu.  ReNu failed to remove the fungus Fusarium from and/or caused Fusarium to remain on Josephine Zapalik's contact lenses causing Josephine Zapalik to develop a fungal infection in both of her eyes, leading to severe corneal scarring, and reduced vision in both eyes and other complications.

5.     At all relevant times, Scott Zapalik was a citizen of the state of Illinois, and a soft contact lens wearer who purchased and used ReNu.  ReNu failed to remove the fungus Fusarium from and/or caused Fusarium to remain on Scott Zapalik's contact lenses causing Scott Zapalik to develop a fungal infection in his right eye, leading to corneal ulcers, corneal scarring and reduced vision in his infected right eye.

6.     Bausch & Lomb was a corporation organized and existing under the laws of the State of New York, with its principal place of business located in Rochester, New York.

7.     Bausch & Lomb was engaged in the business of designing, developing, manufacturing, testing, packaging, advertising, promoting, marketing, distributing, labeling, and selling ReNu within the State of Illinois and engaged in certain acts and omissions, pursuant to 735 ILCS 5/2-209 which

submits it to the jurisdiction of the courts of this state and county which include, but are not limited to:

    a.  The transaction of any business within this State (735 ILCS 5/2-209 (1));

    b.  The commission of a tortious act within this State (735 ICLS 5/2-209(2));

    c. The making or performance of any contract or promise substantially connected with this State (735 ILCS 5/2-209 (a)).

8.    Bausch & Lomb purposely availed itself of the privilege of conducting business and transactions within the State of Illinois and particularly Cook County, Illinois while placing its products within the stream of commerce with the expectation that those products would be purchased and used by consumers in Illinois and elsewhere.

9.    Venue is proper in Cook County, Illinois as to Bausch & Lomb, pursuant to 735 ILCS 5/2-102(a), as it is a foreign corporation authorized to transact business in this state and it is considered to be a resident of Cook County, Illinois as it has a registered office in Chicago, Cook County, Illinois which is located at 208 S. LaSalle Street, Suite 814, Chicago, Illinois 60604 and it is doing business in Cook County, Illinois.  Bausch & Lomb may be served with process at the above described address and in this district pursuant to 735 ILCS 5/2-104.

10.    Walgreen is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located in Deerfield, Lake County, Illinois.

11.    Walgreen placed the subject product into the stream of commerce and specifically does business in Cook County, Illinois by maintaining approximately 100 retail stores within Cook County, Illinois all whom actively promoted, distributed and sold ReNu for profit.  The Defendant Walgreen may be served with process at 200 Wilmot Road, Deerfield, Illinois 60015.

12.    Venue is proper in Cook County, Illinois as to Walgreen, pursuant to 735 ILCS 5/2-101 and 735 ILCS 5/2-102(a), as Walgreen is joined as a Defendant in good faith and with probable cause for the purpose of obtaining a judgment against Walgreen, and it maintains approximately 100 retail stores in Cook County, Illinois all of which were engaged in the promotion, distribution and selling of ReNu at all relevant times.

## GENERAL ALLEGATIONS

13.    ReNu was designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled, and sold by Bausch & Lomb.  ReNu was introduced into the stream of interstate and global commerce by Bausch & Lomb in late 2004.

14.    Commencing in mid to late 2005, Bausch & Lomb began receiving numerous complaints relating to serious Fusarium fungus infections suffered by soft contact lens wearers using ReNu in Singapore.

15.    Fungal keratitis is a serious eye infection that can develop through the whole depth of the cornea.  Symptoms of fungal keratitis include eye pain, excessive watering of or discharge from the infected eye, decrease in vision and light hypersensitivity.  The infection can require prolonged drug therapy with antifungal medication.  Those infected with fungal keratitis who do not receive or

who do not respond to medical treatment may experience significant loss of vision and will usually require surgical intervention, including corneal transplantation. Lack of timely and proper treatment can lead to blindness and/or the loss of the infected eye.

16. According to a Reuters article dated March 31, 2005, authorities in Singapore linked the incidents of Fusarium keratitis to ReNu.

17. Hong Kong officials specifically asked Bausch & Lomb to pull ReNu from the market.

18. According to published reports, ReNu is the only lens care solution to have been identified by Asian officials as the cause of the increase in incidence of Fusarium keratitis.

19. Commencing in February 2006, due to the increase in incidence of Fusarium keratitis in soft contact lens wearers using ReNu in Asia, Bausch & Lomb initiated recalls of ReNu in Singapore, Hong Kong and Malaysia.

20. In a report dated April 10, 2006, the CDC stated that, as of April 9, 2006, 109 cases of suspected Fusarium keratitis were under investigation by the CDC and public health authorities in many states in the U.S.

21. On or about April 10, 2006, the U.S. Food and Drug Administration ("FDA") and the Center for Disease Control (CDC) issued a joint press release, "alerting health care professionals and their patients who wear soft contact lenses to an increasing number of reports in the United States of rare but serious fungal infections in the eye that can cause permanent loss of sight.... Some patients have reported a significant loss of vision, resulting in the need for a corneal transplant." Fusarium was identified as the cause of the reported infections.

22.     The April 10, 2006 FDA and CDC joint press release was the first opportunity for the plaintiffs to reasonably discover any connection between their eye infections, their resulting injuries, their use of ReNu, and Bausch & Lomb's and Walgreen's having distributed a defective and unreasonably dangerous product into the stream of commerce which was being recalled and withdrawn from the market.  This was also the first opportunity for the plaintiffs to reasonably discover the false and untrue nature of any representations, statements or warranties that had been made about the safety and efficacy of ReNu as a cleansing, disinfecting, and moisturizing contact lense solution which had been designed, manufactured and sold by Bausch & Lomb and Walgreen as part of their promotion, distribution, marketing and sale of ReNu to the plaintiffs and other members of the general public.

23.     As a result of the reported cases of Fusarium infections, Bausch & Lomb ceased shipments of ReNu within the United States.

24.     On or about April 13, 2006, Bausch & Lomb requested that U.S. retailers remove ReNu from their shelves.  Bausch & Lomb further recommended that consumers use another lens care solution, until investigation into domestic reports of the fungal keratitis infections among contact lens wearers is concluded.

25.     According to a May 4, 2006 article on *NewsInferno.com,* "[p]resently, the CDC has received 191 reports of eye infections caused by the Fusarium keratitis fungus, with 86 of those cases being confirmed.  Some 54 of the 58 contact lens wearers stated that they had used a Bausch & Lomb lens cleaning solution."

26.    At first, Bausch & Lomb stated that February 2006 was the earliest indication that there may be "an unusual occurrence with this infection." According to the *NewsInferno*.com article:

> [t]hat date, however, was somewhat misleading, since Hong Kong health officials had admittedly told the company in November 2005, that they had "noted an increase in hospital admissions due to the contact-lens-related keratitis from June to September 2005. [Bausch & Lomb] claimed that nothing in the November contact with Hong Kong authorities, or the investigation being done at the time, seemed to require further action since no definitive link had been made between its product and the "spike" in Fusarium infections.
>
> Apparently, however, the Hong Kong government "alerted Bausch & Lomb Inc. to eye infections in users of its contact lens solution in September 2005, way before the company withdrew its product in February this year." (Citing to a 4/27/06 Reuters article).  According to that report, Hong Kong's Health Department had detected the spike in Fusarium cases in July and August and, as a result, had conducted tests of the eye solution.

27.    Despite the fact that Bausch & Lomb knew of the increased incidence of the fungal infections in ReNu users in as early as September 2005, it neither stopped shipping ReNu to retailers in the U.S. nor warned consumers of the potential dangers until April 2006.

28.    As a direct and proximate result of having used the ReNu placed in the stream of commerce by Bausch & Lomb and Walgreen and purchased from Walgreen, Josephine Zapalik and Scott Zapalik have suffered and will continue to suffer severe corneal damage, loss of vision in the affected eye, economic and non-economic damages, including but not limited to significant medical, hospital, rehabilitative and pharmaceutical expenses, lost time and earnings, pain, suffering, lost quality of life and permanent disability.

## COUNT I – JOSEPHINE ZAPALIK'S STRICT LIABILITY CLAIM
## AGAINST BAUSCH & LOMB

29.    Josephine Zapalik adopts and realleges each and every allegation contained in paragraph 1 through 28 of this First Amended Complaint as though more fully set forth herein.

30.    The ReNu solution designed, manufactured and supplied by Bausch & Lomb was defective in design and formulation in that when it left the hands of Bausch & Lomb, the foreseeable risks exceeded the benefits associated with the design and formulation of the product.

31.    The ReNu solution designed, manufactured and supplied by Bausch & Lomb was defective in manufacture or design in that, when it left the hands of Bausch & Lomb, it deviated in a material way from Bausch & Lomb's manufacturing performance standards in that it differed from otherwise identical products manufactured to the same design formula.

32.    The ReNu solution designed, manufactured and supplied by Bausch & Lomb was defective in design and formulation in that, due to its propensity to cause or lead to fungal eye infections, it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

33.    The ReNu solution designed, manufactured and distributed by Bausch & Lomb was defective in that Bausch & Lomb failed to adequately test this product before placing it into the stream of commerce.

34.    As a direct and proximate result of the defective condition of ReNu solution as manufactured and supplied by Bausch & Lomb, Josephine Zapalik has

8

suffered significant physical injury, including severe corneal scarring in both eyes, loss of vision in both eyes, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical care and treatment, and lost time and earnings. The losses are either permanent or continuing in nature and Josephine Zapalik will continue to suffer the losses in the future.

WHEREFORE, Josephine Zapalik demands judgment against Bausch & Lomb for compensatory damages in excess of $75,000.00, plus costs, post-judgment interest, and for such other relief as the Court deems just and proper.

## COUNT II – JOSEPHINE ZAPALIK'S NEGLIGENCE
## CLAIM AGAINST BAUSCH & LOMB

35.    Josephine Zapalik adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this First Amended Complaint as though more fully set forth herein, and alleges further:

36.    Bausch & Lomb had a duty to exercise reasonable care in the design, manufacture, sale, and distribution of ReNu solution it placed into the stream of commerce, including a duty to assure that the product did not cause users to suffer unreasonable or unnecessary injury.

37.    Bausch & Lomb failed to exercise ordinary care in the design, manufacture, sale, testing, and distribution of ReNu into the stream of commerce in that Bausch & Lomb knew or should have known that ReNu caused fungal eye infections and failed to remove fungi, including Fusarium and acted to promote the existence of fungus, including Fusarium on soft contacts lenses, thus

increasing the risk to the contact lens wearer of contracting Fusarium or other fungal keratitis, which could lead to serious illness or injury.

38.     Bausch & Lomb was negligent in the design, manufacture, sale, testing, and/or distribution of ReNu in that it:

      A.     Failed to use due care in designing, formulating, developing and manufacturing ReNu so as to avoid the aforementioned risks to individuals who used ReNu;

      B.     failed to conduct adequate clinical testing and post-marketing surveillance to determine the safety of ReNu;

      C.     placed an unsafe product in the stream of commerce; and

      D.     failed to warn of the dangers associated with the use of ReNu despite having actual and constructive knowledge of such dangers.

39.     Bausch & Lomb knew or should have known that consumers such as Josephine Zapalik could foreseeably suffer injury as a result of Bausch & Lomb's failure to exercise ordinary care as described above.

40.     As a direct and proximate result of the negligence of Bausch & Lomb, Josephine Zapalik has suffered significant physical injury, including severe corneal scarring in both eyes, loss of vision in both eyes, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical care and treatment, and lost time and earnings.  The losses are either permanent or continuing in nature and Josephine Zapalik will continue to suffer the losses in the future.

WHEREFORE, Josephine Zapalik demands judgment against Bausch & Lomb for compensatory damages in excess of $75,000.00, plus costs, post-judgment interest, and for such other relief as the Court deems just and proper.

## COUNT III – JOSEPHINE ZAPALIK'S BREACH OF EXPRESS
## WARRANTIES CLAIM AGAINST BAUSCH & LOMB

41.    Josephine Zapalik adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this First Amended Complaint as though more fully set forth herein, and alleges further:

42.    At the time Bausch & Lomb marketed, sold, and distributed the ReNu solution for use by Josephine Zapalik, Bausch & Lomb expressly warranted ReNu to be of merchantable quality and safe and fit for such use.

43.    At the time Bausch & Lomb marketed, sold, and distributed the ReNu solution for use by consumers such as Josephine Zapalik, Bausch & Lomb knew of the use for which ReNu was intended by consumers such as Josephine Zapalik.

44.    Josephine Zapalik reasonably relied upon the skill and judgment of Bausch & Lomb as to whether ReNu was of merchantable quality and safe and fit for its intended use.

45.    Josephine Zapalik used the ReNu in the manner in which it was intended to be used.

46.    Contrary to such express warranties, ReNu was not of merchantable quality or safe or fit for its intended use because ReNu was not effective for protection against fungal infections, such as Fusarium and actually promoted the growth of fungal infections, such as Fusarium, and was therefore unfit for the ordinary purpose for which it was used as described above.

47.    Timely notice was tendered to Bausch & Lomb pursuant to the applicable provisions of the Uniform Commercial Code by the filing of the original complaint and the service of the same upon said defendant.

48.    As a direct and proximate result of the breach of express warranties by Bausch & Lomb, Josephine Zapalik was caused to suffer significant physical injury, including severe corneal scarring resulting in the need for a corneal transplant, loss of vision, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, and medical care and treatment, and lost time and earnings.  The losses are either permanent or continuing in nature and Josephine Zapalik will continue to suffer the losses in the future.

WHEREFORE, Josephine Zapalik demands judgment against Bausch & Lomb for compensatory damages in excess of $75,000.00, plus costs, post-judgment interest, and for such other relief as this Court deems just and proper.

## COUNT IV – JOSEPHINE ZAPALIK'S BREACH OF IMPLIED WARRANTIES CLAIM AGAINST BAUSCH & LOMB

49.    Josephine Zapalik  adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this First Amended Complaint as though more fully set forth herein, and alleges further:

50.    At the time Bausch & Lomb marketed, sold, and distributed the ReNu solution for use by Josephine Zapalik, Bausch & Lomb knew of the use for which ReNu was intended, and impliedly warranted ReNu to be of merchantable quality and safe and fit for such use.

51.     Josephine Zapalik reasonably relied upon the skill and judgment of Bausch & Lomb as to whether ReNu was of merchantable quality and safe and fit for its intended use.

52.     Josephine Zapalik used the ReNu in the manner in which it was intended to be used.

53.     Contrary to such implied warranties, ReNu was not of merchantable quality or safe or fit for its intended use because ReNu was not effective for protection against fungal infections, such as Fusarium and actually promoted the growth of fungal infections, such as Fusarium, and it was therefore unfit for the ordinary purpose for which it was used as described above.

54.     Timely notice was tendered to Bausch & Lomb pursuant to the applicable provisions of the Uniform Commercial Code by the filing of the original complaint and the service of the same upon said defendant.

55.     As a direct and proximate result of the breach of implied warranties by Bausch & Lomb, Josephine Zapalik was caused to suffer significant physical injury, including severe corneal scarring in both eyes, loss of vision in both eyes, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical care and treatment, and lost time and earning.  The losses are either permanent or continuing in nature and Josephine Zapalik will continue to suffer the losses in the future.

WHEREFORE, Josephine Zapalik demands judgment against Bausch & Lomb for compensatory damages in excess of $75,000.00, plus costs, post-judgment interest, and for such other relief as this Court deems just and proper.

## COUNT V – JOSEPHINE ZAPALIK'S VIOLATION OF ILLINOIS

## DECEPTIVE AND UNFAIR PRACTICE ACT CLAIM

## AGAINST BAUSCH & LOMB

56.     Josephine Zapalik adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this First Amended Complaint as though more fully set forth herein, and alleges further:

57.     The acts, omissions, misrepresentations, non-disclosures and practices of Bausch & Lomb, as more fully alleged herein constitute a violation of the Illinois Deceptive and Unfair Trade Practices Act (the "Act') 815 ILCS 505.

58.     Bausch & Lomb's acts, omissions, misrepresentations, non-disclosures and practices could foreseeably lead to a likelihood of confusion, and did confuse the Plaintiff when purchasing the Defendant's defective and misrepresented product.

59.     Josephine Zapalik is entitled to damages and other statutory relief provided in the Act including but not limited to, appropriate injunctive and equitable relief.

60.     In committing the acts set forth herein, Bausch & Lomb has violated the Act which proscribes unfair, deceptive or unconscionable acts or practices in the conduct of any trade or business.

61.     The policies, acts and practices alleged herein were substantial, were not outweighed by any countervailing benefits to Josephine Zapalik and caused damages to Josephine Zapalik that could have been avoided.  Such conduct is unethical, unscrupulous and against public policy.

62.     The above-described unfair and unconscionable acts and practices conducted by Bausch & Lomb continue to this day and will likely result in damages in the future.

63.     As a result of the conduct described herein, Bausch & Lomb has been unjustly enriched at Josephine Zapalik's expense.

64.     Josephine Zapalik seeks an order of this court declaring such deceptive acts and practices to be violative of the Act, requiring Bausch & Lomb to immediately cease such unfair methods of competition and enjoining Bausch & Lomb from continuing to conduct business via the unfair and unconscionable acts and practices as complained herein.  Josephine Zapalik additionally requests an order disgorging Bausch & Lomb's ill-gotten gains and awarding Josephine Zapalik full damages, plus attorney's fees and costs.

WHEREFORE, Josephine Zapalik demands judgment for any and all remedies and civil penalties available to her under the Illinois Deceptive and Unfair Trade Practice Act, 815 ILCS 505, together with attorneys fees, post-judgment interest and costs, and for such other relief as this Court deems just and proper.

## COUNT VI – JOSEPHINE ZAPALIK'S NEGLIGENT MISREPRESENTATION CLAIM AGAINST BAUSCH & LOMB

65.     Josephine Zapalik adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this First Amended Complaint as though more fully set forth herein, and alleges further:

66.     At all relevant times, Bausch & Lomb owed a duty to the general public, including Josephine Zapalik, to provide true and correct information

about the safety and efficacy of ReNu, as well as about the health hazards and risks of side effects from the use of ReNu.

67.    Commencing in late 2004, and continuing through April 10, 2006, Bausch & Lomb, made representations of fact, orally and in writing, to the general public, including Josephine Zapalik, regarding the safety and efficacy of ReNu.

68.    Specifically, between late 2004 and April 10, 2006, Bausch & Lomb, negligently, recklessly and without any regard for the truth or falsity of their statements, represented to the general public, including Josephine Zapalik that, among other things, ReNu had been tested and was safe for use by soft contact lens users, while, at the same time, failing to disclose the potential health hazards and side effects from the use of ReNu.

69.    The above misrepresentations were false and Bausch & Lomb made the representations without knowledge as to their truth or falsity or made the representations under circumstances in which they ought to have known of their falsity.

70.    The above misrepresentations were made with the intent of inducing Josephine Zapalik to purchase and use ReNu.

71.    Josephine Zapalik justifiably relied to her detriment on Bausch & Lomb's misrepresentations by purchasing and using ReNu.

72.    As a direct and proximate result of the breach of Bausch & Lomb's negligent misrepresentations, Josephine Zapalik was caused to suffer significant physical injury, including severe corneal scarring in both eyes, loss of vision in both eyes, pain and suffering, disability, disfigurement, mental anguish, loss of

capacity for the enjoyment of life, expense of hospitalization, and medical care and treatment, and lost time and earnings.   The losses are either permanent or continuing in nature and Josephine Zapalik will continue to suffer the losses in the future.

WHEREFORE, Josephine Zapalik demands judgment against Bausch & Lomb for compensatory damages in excess of $75,000.00, post-judgment interest, and for such other relief as this Court deems just and proper.

## COUNT VII – JOSEPHINE ZAPALIK'S STRICT LIABILITY CLAIM AGAINST WALGREEN

73.    Josephine Zapalik adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this First Amended Complaint as though more fully set forth herein, and further alleges:

74.    The ReNu supplied by Walgreen was defective in manufacture or construction in that, when it left the hands of Walgreen, it deviated in a material way from Bausch & Lomb's manufacturing performance standards and it differed from otherwise identical products manufactured to the same design formula.

75.    The ReNu supplied by Walgreen was defective in design in that, when it left the hands of Walgreen, the foreseeable risks exceeded the benefits associated with the design and formulation.

76.    Alternatively, the ReNu supplied by Walgreen was defective in design in that it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

77.    The ReNu was defective and unreasonably dangerous when it left the possession of Walgreen in that it contained warnings insufficient to alert

17

consumers, including Josephine Zapalik, of the dangerous risks and reactions associated with the subject product, notwithstanding Walgreen's knowledge of such risks and reactions.

78.     The aforementioned defects existed when Walgreen placed the subject product into the stream of commerce and sold the ReNu to Josephine Zapalik.  Walgreen is strictly liable to Josephine Zapalik.

79.     As a direct and proximate result of the defects in the ReNu, Josephine Zapalik was caused to suffer significant physical injury, including severe corneal scarring in both eyes, loss of vision in both eyes, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical care and treatment, and lost time and earnings.  The losses are permanent and continuing in nature and Josephine Zapalik will continue to suffer the loss in the future.

WHEREFORE, Josephine Zapalik demands judgment against Walgreen for compensatory damages in excess of $75,000.00, post-judgment interest, and for such other relief as this Court deems just and proper.

## COUNT VIII – JOSEPHINE ZAPALIK'S NEGLIGENCE
## CLAIM AGAINST WALGREEN

80.     Josephine Zapalik adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this First Amended Complaint as though more fully set forth herein, and alleges further:

81.     Walgreen had a duty to exercise reasonable care in the sale and distribution of ReNu solution it placed into the stream of commerce, including a

duty to assure that the product did not cause users to suffer unreasonable or unnecessary injury.

82.    Walgreen failed to exercise ordinary care in the sale and distribution of ReNu it placed into the stream of commerce in that Walgreen should have known that ReNu caused fungal eye infections.

83.    Walgreen was negligent in the sale and distribution of ReNu in that it:

> A.    Placed an unsafe product into the stream of commerce; and
>
> B.    failed to warn of the dangers associated with the use of ReNu despite having actual and constructive knowledge of such dangers.

84.    Walgreen knew or should have known that consumers such as Josephine Zapalik could foreseeably suffer injury as a result of Walgreen's failure to exercise ordinary care as described above.

85.    As a direct and proximate result of the negligence of Walgreen, Josephine Zapalik has suffered significant physical injury, including severe corneal scarring in both eyes, loss of vision in both eyes, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical care and treatment, and lost time and earnings.  The losses are either permanent or continuing in nature and Josephine Zapalik will continue to suffer the losses in the future.

WHEREFORE, Josephine Zapalik demands judgment against Walgreen for compensatory damages in excess of $75,000.00, plus costs, post-judgment interest, and for such other relief as the Court deems just and proper.

## COUNT IX – JOSEPHINE ZAPALIK'S BREACH OF IMPLIED
## WARRANTIES CLAIM AGAINST WALGREEN

86.     Josephine Zapalik  adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this First Amended Complaint as though more fully set forth herein, and alleges further:

87.     At the time Walgreen marketed, sold, and distributed the ReNu solution for use by Josephine Zapalik, Walgreen knew of the use for which ReNu was intended, and impliedly warranted ReNu to be of merchantable quality and safe and fit for such use.

88.     Josephine Zapalik reasonably relied upon the skill and judgment of Walgreen as to whether ReNu was of merchantable quality and safe and fit for its intended use.

89.     Josephine Zapalik used the ReNu in the manner in which was intended to be used.

90.     Contrary to such implied warranties, ReNu was not of merchantable quality or safe or fit for its intended use because ReNu was not effective for protection against fungal infections, such as Fusarium and actually promoted the growth of fungal infections, such as Fusarium, and it was therefore unfit for the ordinary purpose for which it was used as described above.

91.     Timely notice was tendered to Walgreen pursuant to the applicable provisions of the Uniform Commercial Code by the filing of the original complaint and the service of the same upon said defendant.

92.     As a direct and proximate result of the breach of implied warranties by Walgreen, Josephine Zapalik was caused to suffer significant physical injury,

including severe corneal scarring in both eyes, loss of vision in both eyes, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical care and treatment, and lost time and earnings. The losses are either permanent or continuing in nature and Josephine Zapalik will continue to suffer the losses in the future.

WHEREFORE, Josephine Zapalik demands judgment against Walgreen for compensatory damages in excess of $75,000.00, plus costs, post-judgment interest, and for such other relief as this Court deems just and proper.

## COUNT X – SCOTT ZAPALIK'S STRICT LIABILITY CLAIM AGAINST BAUSCH & LOMB

93.    Scott Zapalik adopts and realleges each and every allegation contained in paragraph 1 through 28 of this First Amended Complaint as though more fully set forth herein, and alleges further:

94.    The ReNu solution designed, manufactured and supplied by Bausch & Lomb was defective in design and formulation in that when it left the hands of Bausch & Lomb, the foreseeable risks exceeded the benefits associated with the design and formulation of the product.

95.    The ReNu solution designed, manufactured and supplied by Bausch & Lomb was defective in manufacture or design in that, when it left the hands of Bausch & Lomb, it deviated in a material way from Bausch & Lomb's manufacturing performance standards in that it differed from otherwise identical products manufactured to the same design formula.

96.    The ReNu solution designed, manufactured and supplied by Bausch & Lomb was defective in design and formulation in that, due to its propensity to

cause or lead to fungal eye infections, it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

97.    The ReNu solution designed, manufactured and distributed by Bausch & Lomb was defective in that Bausch & Lomb failed to adequately test this product before placing it into the stream of commerce.

98.    As a direct and proximate result of the defective condition of ReNu solution as manufactured and supplied by Bausch & Lomb, Scott Zapalik has suffered significant physical injury, including corneal ulcers and severe corneal scarring in his right eye, loss of vision in the right eye, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical care and treatment, and lost time and earnings. The losses are either permanent or continuing in nature and Scott Zapalik will continue to suffer the losses in the future.

WHEREFORE, Scott Zapalik demands judgment against Bausch & Lomb for compensatory damages in excess of $75,000.00, plus costs, post-judgment interest, and for such other relief as the Court deems just and proper.

**COUNT XI – SCOTT ZAPALIK'S NEGLIGENCE**

**CLAIM AGAINST BAUSCH & LOMB**

99.    Scott Zapalik adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this First Amended Complaint as though more fully set forth herein, and alleges further:

100.    Bausch & Lomb had a duty to exercise reasonable care in the design, manufacture, sale, and distribution of ReNu solution it placed into the

stream of commerce, including a duty to assure that the product did not cause users to suffer unreasonable or unnecessary injury.

101.    Bausch & Lomb failed to exercise ordinary care in the design, manufacture, sale, testing, and distribution of Renu into the stream of commerce in that Bausch & Lomb knew or should have known that ReNu caused fungal eye infections and failed to remove fungi, including Fusarium and acted to promote the existence of fungus, including Fusarium on soft contacts lenses, thus increasing the risk to the contact lens wearer of contracting Fusarium or other fungal keratitis, which could lead to serious illness or injury.

102.    Bausch & Lomb was negligent in the design, manufacture, sale, testing, and/or distribution of ReNu in that it:

> A.    Failed to use due care in designing, formulating, developing and manufacturing ReNu so as to avoid the aforementioned risks to individuals who used ReNu;
>
> B.    failed to conduct adequate clinical testing and post-marketing surveillance to determine the safety of ReNu;
>
> C.    placed an unsafe product in the stream of commerce; and
>
> D.    failed to warn of the dangers associated with the use of ReNu despite having actual and constructive knowledge of such dangers.

103.    Bausch & Lomb knew or should have known that consumers such as Scott Zapalik could foreseeably suffer injury as a result of Bausch & Lomb's failure to exercise ordinary care as described above.

104.    As a direct and proximate result of the negligence of Bausch & Lomb, Scott Zapalik has suffered significant physical injury, including corneal ulcers and severe corneal scarring in his right eye, loss of vision in the right eye,

pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical care and treatment, and lost time and earnings. The losses are either permanent or continuing in nature and Scott Zapalik will continue to suffer the losses in the future.

WHEREFORE, Scott Zapalik demands judgment against Bausch & Lomb for compensatory damages in excess of $75,000.00, plus costs, post-judgment interest, and for such other relief as the Court deems just and proper.

## COUNT XII – SCOTT ZAPALIK'S BREACH OF EXPRESS WARRANTIES CLAIM AGAINST BAUSCH & LOMB

105.    Scott Zapalik adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this First Amended Complaint as though more fully set forth herein, and alleges further:

106.    At the time Bausch & Lomb marketed, sold, and distributed the ReNu solution for use by Scott Zapalik, Bausch & Lomb expressly warranted ReNu to be of merchantable quality and safe and fit for such use.

107.    At the time Bausch & Lomb marketed, sold, and distributed the ReNu solution for use by consumers such as Scott Zapalik, Bausch & Lomb knew of the use for which ReNu was intended by consumers such as Scott Zapalik.

108.    Scott Zapalik reasonably relied upon the skill and judgment of Bausch & Lomb as to whether ReNu was of merchantable quality and safe and fit for its intended use.

109.    Scott Zapalik used the ReNu in the manner in which it was intended to be used.

110.    Contrary to such express warranties, ReNu was not of merchantable quality or safe or fit for its intended use because ReNu was not effective for protection against fungal infections, such as Fusarium and actually promoted the growth of fungal infections, such as Fusarium, and was therefore unfit for the ordinary purpose for which it was used as described above.

111.    Timely notice was tendered to Bausch & Lomb pursuant to the applicable provisions of the Uniform Commercial Code by the filing of the original complaint and the service of the same upon said defendant.

112.    As a direct and proximate result of the breach of express warranties by Bausch & Lomb, Scott Zapalik was caused to suffer significant physical injury, including corneal ulcers and severe corneal scarring in his right eye, loss of vision in the right eye, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, and medical care and treatment, and lost time and earnings.  The losses are either permanent or continuing in nature and Scott Zapalik will continue to suffer the losses in the future.

WHEREFORE, Scott Zapalik demands judgment against Bausch & Lomb for compensatory damages in excess of $75,000.00, plus costs, post-judgment interest, and for such other relief as this Court deems just and proper.

## COUNT XIII – SCOTT ZAPALIK'S BREACH OF IMPLIED WARRANTIES CLAIM AGAINST BAUSCH & LOMB

113.    Scott Zapalik adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this First Amended Complaint as though more fully set forth herein, and alleges further:

25

114.    At the time Bausch & Lomb marketed, sold, and distributed the ReNu solution for use by Scott Zapalik, Bausch & Lomb knew of the use for which ReNu was intended, and impliedly warranted ReNu to be of merchantable quality and safe and fit for such use.

115.    Scott Zapalik reasonably relied upon the skill and judgment of Bausch & Lomb as to whether ReNu was of merchantable quality and safe and fit for its intended use.

116.    Scott Zapalik used the ReNu in the manner in which was intended to be used.

117.    Contrary to such implied warranties, ReNu was not of merchantable quality or safe or fit for its intended use because ReNu was not effective for protection against fungal infections, such as Fusarium and actually promoted the growth of fungal infections, such as Fusarium, and it was therefore unfit for the ordinary purpose for which it was used as described above.

118.    Timely notice was tendered to Bausch & Lomb pursuant to the applicable provisions of the Uniform Commercial Code by the filing of the original complaint and the service of the same upon said defendant.

119.    As a direct and proximate result of the breach of implied warranties by Bausch & Lomb, Scott Zapalik was caused to suffer significant physical injury, including corneal ulcers and severe corneal scarring in his right eye, loss of vision in the right eye, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical care and treatment, and lost time and earnings.  The losses are either permanent or

continuing in nature and Scott Zapalik will continue to suffer the losses in the future.

WHEREFORE, Scott Zapalik demands judgment against Bausch & Lomb for compensatory damages in excess of $75,000.00, plus costs, post-judgment interest, and for such other relief as this Court deems just and proper.

## COUNT XIV –  SCOTT ZAPALIK'S VIOLATION OF ILLINOIS DECEPTIVE AND UNFAIR PRACTICE ACT CLAIM AGAINST BAUSCH & LOMB

120.    Scott Zapalik adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this First Amended Complaint as though more fully set forth herein, and alleges further:

121.    The acts, omissions, misrepresentations, non-disclosures and practices of Bausch & Lomb, as more fully alleged herein constitute a violation of the Illinois Deceptive and Unfair Trade Practices Act (the "Act') 815 ILCS 505.

122.    Bausch & Lomb's acts, omissions, misrepresentations, non-disclosures and practices could foreseeably lead to a likelihood of confusion, and did confuse the Plaintiff when purchasing the Defendant's defective and misrepresented product.

123.    Scott Zapalik is entitled to damages and other statutory relief provided in the Act including but not limited to, appropriate injunctive and equitable relief.

124.    In committing the acts set forth herein, Bausch & Lomb has violated the Act which proscribes unfair, deceptive or unconscionable acts or practices in the conduct of any trade or business.

125.    The policies, acts and practices allege herein were substantial, were not outweighed by any countervailing benefits to Scott Zapalik and caused damages to Scott Zapalik that could have been avoided.  Such conduct is unethical, unscrupulous and against public policy.

126.    The above-described unfair and unconscionable acts and practices conducted by Bausch & Lomb continue to this day and will likely result in damages in the future.

127.    As a result of the conduct described herein, Bausch & Lomb has been unjustly enriched at Scott Zapalik's expense.

128.    Scott Zapalik seeks an order of this court declaring such deceptive acts and practices to be violative of the Act, requiring Bausch & Lomb to immediately cease such unfair methods of competition and enjoining Bausch & Lomb from continuing to conduct business via the unfair and unconscionable acts and practices as complained herein.  Scott Zapalik additionally requests an order disgorging Bausch & Lomb's ill-gotten gains and awarding Scott Zapalik full damages, plus attorney's fees and costs.

WHEREFORE, Scott Zapalik demands judgment for any and all remedies and civil penalties available to him under the Illinois Deceptive and Unfair Trade Practice Act, 815 ILCS 505, together with attorneys fees, post-judgment interest and costs, and for such other relief as this Court deems just and proper.

## COUNT XV – SCOTT ZAPALIK'S NEGLIGENT MISREPRESENTATION CLAIM AGAINST BAUSCH & LOMB

129.    Scott Zapalik adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this First Amended Complaint as though more fully set forth herein, and alleges further:

130.    At all relevant times, Bausch & Lomb owed a duty to the general public, including Scott Zapalik, to provide true and correct information about the safety and efficacy of ReNu, as well as about the health hazards and risks of side effects from the use of ReNu.

131.    Commencing in late 2004, and continuing through April 10, 2006, Bausch & Lomb, made representations of fact, orally and in writing, to the general public, including Scott Zapalik, regarding the safety and efficacy of ReNu.

132.    Specifically, between late 2004 and April 10, 2006, Bausch & Lomb, negligently, recklessly and without any regard for the truth or falsity of their statements, represented to the general public, including Scott Zapalik that, among other things, ReNu had been tested and was safe for use by soft contact lens users, while, at the same time, failing to disclose the potential health hazards and side effects from the use of ReNu.

133.    The above misrepresentations were false and Bausch & Lomb made the representations without knowledge as to their truth or falsity or made the representations under circumstances in which they ought to have known of their falsity.

134.    The above misrepresentations were made with the intent of inducing Scott Zapalik to purchase and use ReNu.

135.    Scott Zapalik justifiably relied to his detriment on Bausch & Lomb's misrepresentations by purchasing and using ReNu.

136.    As a direct and proximate result of the breach of Bausch & Lomb's negligent misrepresentations, Scott Zapalik was caused to suffer significant physical injury, including corneal ulcers and severe corneal scarring in his right eye, loss of vision in the right eye, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical care and treatment, and lost time and earnings.   The losses are either permanent or continuing in nature and Scott Zapalik will continue to suffer the losses in the future.

WHEREFORE, Scott Zapalik demands judgment against Bausch & Lomb for compensatory damages in excess of $75,000.00, post-judgment interest, and for such other relief as this Court deems just and proper.

## COUNT XVI –  SCOTT ZAPALIK'S STRICT LIABILITY CLAIM AGAINST WALGREEN

137.    Scott Zapalik adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this First Amended Complaint as though more fully set forth herein, and further alleges:

138.    The ReNu supplied by Walgreen was defective in manufacture or construction in that, when it left the hands of Walgreen, it deviated in a material way from Bausch & Lomb's manufacturing performance standards and it differed from otherwise identical products manufactured to the same design formula.

139.    The ReNu supplied by Walgreen was defective in design in that, when it left the hands of Walgreen, the foreseeable risks exceeded the benefits associated with the design and formulation.

140.    Alternatively, the ReNu supplied by Walgreen was defective in design in that it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

141.    The ReNu was defective and unreasonably dangerous when it left the possession of Walgreen in that it contained warnings insufficient to alert consumers, including Scott Zapalik, of the dangerous risks and reactions associated with the subject product, notwithstanding Walgreen's knowledge of such risks and reactions.

142.    The aforementioned defects existed when Walgreen placed the subject product into the stream of commerce and sold the ReNu to Scott Zapalik. Walgreen is strictly liable to Scott Zapalik.

143.    As a direct and proximate result of the defects in the ReNu, Scott Zapalik was caused to suffer significant physical injury, including corneal ulcers and severe corneal scarring in his right eye, loss of vision in the right eye, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical care and treatment, and lost time and earnings. The losses are permanent and continuing in nature and Scott Zapalik will continue to suffer the loss in the future.

WHEREFORE, Scott Zapalik demands judgment against Walgreen for compensatory damages in excess of $75,000.00, post-judgment interest, and for such other relief as this Court deems just and proper.

## COUNT XVII – SCOTT ZAPALIK'S NEGLIGENCE
## CLAIM AGAINST WALGREEN

144.    Scott Zapalik adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this First Amended Complaint as though more fully set forth herein, and alleges further:

145.    Walgreen had a duty to exercise reasonable care in the sale and distribution of ReNu solution it placed into the stream of commerce, including a duty to assure that the product did not cause users to suffer unreasonable or unnecessary injury.

146.    Walgreen failed to exercise ordinary care in the sale and distribution of ReNu it placed into the stream of commerce in that Walgreen should have known that ReNu caused fungal eye infections.

147.    Walgreen was negligent in the sale and distribution of ReNu in that it:

      A.    Placed an unsafe product into the stream of commerce; and

      B.    failed to warn of the dangers associated with the use of ReNu despite having actual and constructive knowledge of such dangers.

148.    Walgreen knew or should have known that consumers such as Scott Zapalik could foreseeably suffer injury as a result of Walgreen's failure to exercise ordinary care as described above.

149.    As a direct and proximate result of the negligence of Walgreen, Scott Zapalik has suffered significant physical injury, including corneal ulcers and severe corneal scarring in his right eye, loss of vision in the right eye, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical care and treatment,

and lost time and earnings.  The losses are either permanent or continuing in nature and Scott Zapalik will continue to suffer the losses in the future.

WHEREFORE, Scott Zapalik demands judgment against Walgreen for compensatory damages in excess of $75,000.00, plus costs, post-judgment interest, and for such other relief as the Court deems just and proper.

### COUNT XVIII – SCOTT ZAPALIK'S BREACH OF IMPLIED WARRANTIES CLAIM AGAINST WALGREEN

150.    Scott Zapalik adopts and realleges each and every allegation contained in paragraphs 1 through 28 of this First Amended Complaint as though more fully set forth herein, and alleges further:

151.    At the time Walgreen marketed, sold, and distributed the ReNu solution for use by Scott Zapalik, Walgreen knew of the use for which ReNu was intended, and impliedly warranted ReNu to be of merchantable quality and safe and fit for such use.

152.    Scott Zapalik reasonably relied upon the skill and judgment of Walgreen as to whether ReNu was of merchantable quality and safe and fit for its intended use.

153.    Scott Zapalik used the ReNu in the manner in which was intended to be used.

154.    Contrary to such implied warranties, ReNu was not of merchantable quality or safe or fit for its intended use because ReNu was not effective for protection against fungal infections, such as Fusarium and actually promoted the growth of fungal infections, such as Fusarium, and it was therefore unfit for the ordinary purpose for which it was used as described above.

155.    Timely notice was tendered to Walgreen pursuant to the applicable provisions of the Uniform Commercial Code by the filing of the original complaint and the service of the same upon said defendant.

156.    As a direct and proximate result of the breach of implied warranties by Walgreen, Scott Zapalik was caused to suffer significant physical injury, including corneal ulcers and severe corneal scarring in his right eye, loss of vision in his right eyes, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical care and treatment, and lost time and earnings.  The losses are either permanent or continuing in nature and Scott Zapalik will continue to suffer the losses in the future.

WHEREFORE, Scott Zapalik demands judgment against Walgreen for compensatory damages in excess of $75,000.00, plus costs, post-judgment interest, and for such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Josephine Zapalik and Scott Zapalik demand a trial by jury on all issues triable as of right by a jury.

GARY D. McCALLISTER & ASSOCIATES, LLC


By:___s/ Gary D. McCallister_____
            Gary D. McCallister
            *One of the Attorneys for Plaintiffs*

GARY D. McCALLISTER & ASSOCIATES, LLC
120 N. LaSalle St., Suite 2800
Chicago, Illinois 60602
(312) 345-0611
(312) 345-0612 (Fax)